**SPERTUS, LANDES & UMHOFER, LLP**
1990 S. Bundy Drive #705
Los Angeles, CA 90025
Telephone: 310.826.4700
Facsimile: 310.826.4711
Matthew D. Umhofer (SBN 206607)
matthew@spertuslaw.com

**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: 202.434.5000
Facsimile: 202.434.5029
Enu Mainigi (admitted pro hac vice)
emainigi@wc.com
Holly Conley (admitted pro hac vice)
hconley@wc.com
Benjamin Hazelwood (admitted pro hac vice)
bhazelwood@wc.com

*Attorneys for Defendant CVS Pharmacy, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, *ex rel.* JACK CHIN,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>CVS PHARMACY, INC.,<br><br>　　　　　　　Defendant. | **Case No.: CV 09-1293-PSG**<br><br>**DEFENDANT CVS PHARMACY, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date:　　　　　August 21, 2017<br>Time:　　　　　1:30 PM<br>Courtroom:　　6A<br><br>Assigned to Hon. Philip S. Gutierrez |

TO:  PLAINTIFFS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on August 21, 2017, at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 6A of the Honorable Philip S. Gutierrez, First Street Courthouse, 350 West 1st Street, Los Angeles, California 90012, the defendant, CVS Pharmacy, Inc., will and hereby does move the Court pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for an order dismissing the Second Amended Complaint of Relator Jack Chin for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted.

This Motion is and will be based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, court records and files, and upon such other evidence and argument that may be offered at the hearing on the Motion.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on June 14, 2017.


Dated:  June 21, 2017


Respectfully Submitted,

**SPERTUS, LANDES & UMHOFER, LLP**


By:  _____/s/_____
       Matthew D. Umhofer

WILLIAMS & CONNOLLY LLP
Enu Mainigi*
Holly Conley*
Benjamin Hazelwood*
*Admitted pro hac vice

*Attorneys for Defendant CVS Pharmacy, Inc.*

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

# **TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................1

ALLEGATIONS .....................................................................................................2

PROCEDURAL HISTORY .....................................................................................4

ARGUMENT ..........................................................................................................4

I.    THE COURT LACKS JURISDICTION OVER THIS CASE .......................4

      A.    Relator's Claims Are Barred by the First-to-File Rule.......................4

      B.    Relator's Claim Does Not Satisfy the Jurisdictional Requirements
            of the New Hampshire False Claims Act................................................9

II.   RELATOR'S ALLEGATIONS DO NOT STATE A CLAIM ON THE
      MERITS...........................................................................................................10

      A.    The Complaint Does Not State a Claim Under the FCA ...................10

      B.    The Complaint Does Not State a Claim Under the State FCAs .........13

CONCLUSION........................................................................................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

1

# TABLE OF AUTHORITIES

2

## CASES

3

*Blue Water Boating Inc. v. Plains All Am. Pipeline, L.P.*,

4

2017 WL 405425 (C.D. Cal. Jan. 26, 2017) ......................................................... 10

5

*Bly-Magee v. California*, 236 F.3d 1014 (9th Cir. 2001) ....................................... 10

6

*Foglia v. Renal Ventures Mgmt., LLC*, 830 F. Supp. 2d 8 (D.N.J. 2011) ................. 14

7

*In re Natural Gas Royalties Qui Tam Litig.*, 566 F.3d 956

8

(10th Cir. 2009) ...................................................................................................... 7

9

*Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*,

10

135 S. Ct. 1970 (2015) ........................................................................................... 8

11

*Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*,

12

858 F.2d 1376 (9th Cir. 1988) ................................................................................ 8

13

*United States ex rel. Acad. Health Ctr., Inc. v. Hyperion Found., Inc.*,

14

2014 WL 3385189 (S.D. Miss. July 9, 2014) ........................................................ 11

15

*United States ex rel. Aflatooni v. Kitsap Physicians Serv.*, 314 F.3d 995

(9th Cir. 2002) ....................................................................................................... 10

16

*United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493

17

(6th Cir. 2007) ....................................................................................................... 13

18

*United States ex rel. Branch Consultants v. Allstate Ins.*, 560 F.3d 371

19

(5th Cir. 2009) .................................................................................................... 6, 7

20

*United States ex rel. Cafasso v. General Dynamics C4 Sys., Inc.*,

21

637 F.3d 1047 (9th Cir. 2011) ............................................................................... 13

22

*United States ex rel. Carter v. Halliburton Co.*, 144 F. Supp. 3d 869

23

(E.D. Va. 2015) ....................................................................................................... 8

24

*United States ex rel. Denis v. Medco Health Sols., Inc.*, 2017 WL 63006

(D. Del. Jan. 5, 2017) ......................................................................................... 7, 9

25

*United States ex rel. Hagerty v. Cyberonics, Inc.*, 95 F. Supp. 3d 240

26

(D. Mass. 2015) ............................................................................................... 14–15

27

*United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121

28

(9th Cir. 2015) (en banc) ..................................................................................... 5, 8

*United States ex rel. Jorgenson v. Alan Ritchey, Inc.*, 2007 WL 1287932
    (W.D. Wash. Apr. 27, 2007)................................................................11, 13

*United States ex rel. Kester v. Novartis Pharm. Corp.*,
    23 F. Supp. 3d 242 (S.D.N.Y. 2014) ..........................................................11

*United States ex rel. Kroening v. Forest Pharm., Inc.*,
    155 F. Supp. 3d 882 (E.D. Wis. 2016) ........................................................14

*United States ex rel. Lawton v. Takeda Pharm. Co.*, 842 F.3d 125
    (1st Cir. 2016) ..............................................................................................14

*United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181
    (9th Cir. 2001) ......................................................................................6, 7, 8

*United States ex rel. Modglin v. DJO Glob. Inc.*, 114 F. Supp. 3d 993
    (C.D. Cal. 2015)............................................................................................12

*United States ex rel. Nowak v. Medtronic, Inc.*, 806 F. Supp. 2d 310
    (D. Mass. 2011) ......................................................................................13–14

*United States ex rel. Palmieri v. Alpharma, Inc.*, 2016 WL 7324629
    (D. Md. Dec. 16, 2016)...................................................................................8

*United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503
    (6th Cir. 2009) ...............................................................................................6

*United States ex rel. Shea v. Verizon Commc'ns, Inc.*, 160 F. Supp. 3d 16
    (D.D.C. 2015) ............................................................................................7, 8

*United States ex rel. Szymoniak v. ACE Sec. Corp.*, 2014 WL 1910876
    (D.S.C. May 12, 2014)....................................................................................6

*United States ex rel. Wood v. Allergan, Inc.*, ___ F. Supp. 3d ___, 2017
    WL 1233991 (S.D.N.Y. Mar. 31, 2017)........................................................9

*United States ex rel. Woods v. SouthernCare, Inc.*, 2013 WL 1339375
    (S.D. Miss. Mar. 30, 2013) ....................................................................11, 13

*United States v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014
    (9th Cir. 1999) ...............................................................................................7

*United States v. Aurora Las Encinas, LLC*, 2012 WL 12897081
    (C.D. Cal. Sept. 6, 2012) .............................................................................13

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

*United States v. N. Am. Health Care, Inc.*, 173 F. Supp. 3d 943
    (N.D. Cal. 2016) ................................................................................ 14

*United States v. Unisys Corp.*, 178 F. Supp. 3d 358 (E.D. Va. 2016) ..................... 8, 9

*United States v. United Healthcare Ins.*, 848 F.3d 1161 (9th Cir. 2016) ............. passim

## STATUTES

31 U.S.C. § 3730(b)(5) ................................................................................ 5

Cal. Gov't Code § 12652(c)(10) ................................................................. 5

D.C. Code § 2-381.03(b)(6) ...................................................................... 5

Del. Code Ann. Title 6 § 1203(5) ............................................................. 5

False Claims Act, 31 U.S.C. §§ 3729–3733 .............................................. 3

Fed. R. Civ. P. 8(a) ............................................................................. 10, 12

Fed. R. Civ. P. 9(b) .......................................................................... passim

Fed. R. Civ. P. 12(b)(1) ............................................................................. 5

Fla. Stat. Ann. § 68.083(7) ....................................................................... 5

Ga. Code Ann. § 49-4-168.2(c)(6) ........................................................... 5

Haw. Rev. Stat. § 661-25(e) ...................................................................... 5

Ill. Comp. Stat. § 175/4(b)(5) ................................................................... 5

Ind. Code Ann. § 5-11-5.5-4(g) ................................................................ 5

La. Rev. Stat. Ann. § 46:439.2(A)(3) ....................................................... 5

Mass. Gen. Laws Ann. Chapter 12, § 5C(6) ............................................ 5

Mich. Comp. Laws Ann. § 400.160a(4) .................................................... 5

N.H. Rev. Stat. Ann. § 167:61-c(II)(a) ..................................................... 9

N.H. Rev. Stat. Ann. § 167:61-c(II)(b) ..................................................... 5

N.J. Stat. Ann. § 2A:32C-5(i) ................................................................... 5

N.M. Stat. Ann. § 44-9-5(E) ..................................................................... 5

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

Nev. Rev. Stat. Ann. § 357.080(2) ........................................................................ 5

New Hampshire False Claims Act, N.H. Rev. Stat. Ann. §§ 167:58–61-e .................. 9

Okla. Stat. Ann. Title 63, § 5053.2(B)(5) .............................................................. 5

R.I. Gen. Laws § 9-1.1-4(b)(5) ............................................................................. 5

Tenn. Code Ann. § 4-18-104(c)(10) ...................................................................... 5

Tex. Hum. Res. Code Ann. § 36.106 ...................................................................... 5

Va. Code Ann. § 8.01-216.5(E) ............................................................................. 5

Wis. Stat. Ann. § 20.931(5)(e) (2007) ................................................................... 5

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

# INTRODUCTION

This is not a typical False Claims Act case in which a relator reveals inside information about an allegedly fraudulent course of conduct.  Relator is not a whistleblower.  In fact, he has no inside information about any activities of CVS Pharmacy, Inc. ("CVS").  Rather, he is a competitor who bases his allegations of company-wide fraud on a publicly advertised promotion through which, in certain circumstances, CVS provided $25 gift cards to customers in exchange for those individuals transferring their prescriptions to a CVS pharmacy.  Relator attempts to cast these promotions as fraudulent on a nationwide basis, but grounds his allegations in vague assertions that a handful of CVS pharmacies—out of nearly ten thousand—have, on occasion, provided a gift card to beneficiaries of government health care programs.  Relator's claims should be dismissed for three reasons.

*First*, Relator is not the first to file a False Claims Act lawsuit regarding these promotions.  A lawsuit bringing almost identical claims against Walgreens was filed in 2008 and included allegations regarding the entire industry, just as Relator's original and first amended complaints in this case attributed the same alleged fraud to Walgreens, Rite Aid and CVS (the claims against Walgreens and Rite Aid having been dismissed after government intervention and settlement).  Because the 2008 lawsuit was already pending when Relator filed this action in 2009, the False Claims Act's first-to-file rule bars this lawsuit.

*Second*, Relator has not pleaded a claim for relief with the particularity demanded by Federal Rule of Civil Procedure 9(b).  He claims that CVS has a "nationwide" practice of including government beneficiaries in its prescription-transfer program, but alleges nothing from which the Court can infer that this is the case.  Relator does not identify the mechanism by which this alleged fraud was carried out on a company-wide basis, relying instead on a handful of vague allegations about single occasions on which a few pharmacies allegedly deviated from CVS's policy excluding government beneficiaries from participating in the

1

---

**DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

promotion. Not only are these allegations themselves too vague to support any claim, but they are wholly insufficient to support the existence of a nationwide scheme.

*Third*, Relator provides no allegations to support his additional claims for relief under twenty-one state false claims laws because he makes nothing but the barest conclusory allegation that a claim for payment was submitted to the Medicaid programs of each of those states. Accordingly, Relator's state-law claims also fail under Rule 9(b).

## ALLEGATIONS

The Second Amended Complaint ("SAC") takes issue with a CVS promotion in which, under certain circumstances, customers could receive a $25 gift card for transferring their prescriptions to CVS pharmacies. *See* DE 121 (SAC) ¶ 12. This promotion, Relator asserts, was "widely advertised" in written marketing materials distributed by CVS and on the internet, *id.* ¶ 15C, and through "large signs and banners in the store stating CVS accepted competitors' coupons," *id.* ¶ 16. Relator alleges that the written materials related to this promotion made clear that beneficiaries of government health care programs were not eligible. *See id.* ¶ 12.

Relator, a pharmacist who worked for Sweetbay Supermarket Company, *id.* ¶ 13, asserts no personal knowledge of the manner in which this promotion operated at CVS. Instead, he claims to have been told by some of his customers who were beneficiaries of federal health care programs that they had obtained gift cards "in return for transferring their prescriptions to the defendant's pharmacies and purchasing prescription drugs from the defendant." *Id.* ¶ 14. From this, Relator assumes "that at various times during the course of at least the last 15 years," CVS provided $25 gift cards to beneficiaries of federal health care programs, in exchange for those customers transferring their prescriptions to CVS pharmacies. *Id.* ¶¶ 11–12.

Relator bases the assertion that CVS included beneficiaries of federal health care programs in its prescription-transfer promotion on an "investigation" he launched, during which he personally brought prescriptions for his mother- and

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

1  father-in-law to CVS pharmacies and demanded $25 gift cards in exchange for

2  transferring those prescriptions.  *See id.* ¶ 15.  Relator does not disclose how many

3  attempts he made to cause CVS to provide him the requested gift cards, but only that

4  his efforts were successful on two occasions in 2009, once at a CVS pharmacy in

5  Florida and once in Alabama.  *See id.* ¶¶ 15A, 15B.

6      The SAC added the alleged observations of two former CVS employees from

7  two pharmacy locations.  Paula Zorek, "a pharmacy technician and pharmacy

8  technician trainer for CVS from the late 1980s until 2006," allegedly saw during her

9  tenure "that other management staff did not ask pharmacy staff if the customer was a

10  federal beneficiary" before providing a gift card.  *Id.* ¶ 16.  In 2014, Zorek also

11  allegedly personally brought a prescription for her husband,[1] a Medicare beneficiary,

12  to a CVS pharmacy in Pennsylvania and obtained a $25 gift card on one occasion.  *Id.*

13  ¶ 17.  The second individual, Justin Torpey, "was a pharmacy technician with CVS in

14  Viera, Florida" in 2008 and 2009, whom Relator alleges generally observed the

15  provision of $25 gift cards to government beneficiaries.  *Id.* ¶ 15C.  Torpey allegedly

16  attended a meeting at his pharmacy in 2008, during which the local District Manager

17  "told staff . . . that CVS wanted to keep these customers and if a customer insisted on

18  obtaining a gift card when transferring a prescription, then they were to find a way to

19  do this."  *Id.*

20      According to Relator, these vague allegations regarding single events at a few

21  of CVS's nearly ten thousand pharmacies supports a claim that CVS engaged in a

22  "nationwide" practice of allowing government beneficiaries to participate in the

23  prescription-transfer promotion over the course of fifteen years.  *Id.* ¶¶ 11, 15.

24  Relator claims that CVS thereby violated the False Claims Act ("FCA"), 31 U.S.C.

25  §§ 3729–3733, and corresponding state laws of California, Delaware, Florida,

26

27  [1]  Zorek's husband at the time had a pending lawsuit against CVS regarding

28      unrelated issues.

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

Georgia, Hawaii, Illinois, Indiana, Louisiana, Massachusetts, Michigan, Nevada, New Hampshire, New Jersey, New Mexico, Oklahoma, Rhode Island, Tennessee, Texas, Virginia, Wisconsin, and the District of Columbia ("State FCAs").  *See* DE 121 (SAC) ¶¶ 6–60.

## PROCEDURAL HISTORY

Relator filed this case on February 24, 2009.  The case remained under seal for seven years while the federal and state governments investigated the allegations. During this time, the federal government entered into settlement agreements with Walgreens and Rite Aid.  On March 21, 2016, the federal government notified the Court that it had decided not to intervene in the case as to the remaining defendant, CVS.  *See* DE 75.  The following day, the Court ordered that the case be unsealed, and that Relator serve the complaint on CVS.  *See* DE 76 (Mar. 22, 2016 Order) at 4. On January 23, 2017, the day before the deadline for service and ten months after the government declined to intervene, Relator served CVS, *see* DE 94.  Shortly after doing so, Relator first informed counsel for CVS that he desired to amend his complaint to add new federal and state claims and the additional factual allegations attributable to the former CVS employees noted above.  CVS opposed these amendments and, on May 1, 2017, the Court permitted Relator to add the additional factual allegations, but denied Relator's request to add new legal claims, holding that Relator had failed to comply with the mandatory *qui tam* procedures applicable to such claims.  *See* DE 120 (May 1, 2017 Order).  CVS now moves to dismiss the remaining claims for lack of subject-matter jurisdiction and failure to state a claim.

## ARGUMENT

## I.   THE COURT LACKS JURISDICTION OVER THIS CASE.

### A.   Relator's Claims Are Barred by the First-to-File Rule.

The FCA's first-to-file rule provides that once a person brings an FCA action, no person other than the Government may "bring a related action based on the facts

underlying the pending action." 31 U.S.C. § 3730(b)(5).[2]  The first-to-file rule is

"jurisdictional," *United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d

1121, 1130 (9th Cir. 2015) (en banc), so a first-to-file defect mandates that the case

be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

When Relator filed this case against Walgreens, Rite Aid, and CVS on

February 24, 2009, a nearly identical FCA complaint was pending in the U.S. District

Court for the Eastern District of Michigan, *United States ex rel. Bass, et al. v.

Walgreen Co.*, No. 5:08-cv-13827-JCO-MJH (E.D. Mich. Sept. 5, 2008).  Like

Relator here, the relator in that case claimed that Walgreens provided gift cards and

coupons to Medicare and Medicaid beneficiaries, in exchange for those beneficiaries

transferring their prescriptions to Walgreens pharmacies.  *United States ex rel. Bass,

et al. v. Walgreen Co.*, No. 5:08-cv-13827-JCO-MJH, DE 1 (Complaint) ¶¶ 16–19,

24–25.  Although the *Bass* relator was a Walgreens insider, with actual knowledge of

Walgreens' practices regarding the promotions, the *Bass* complaint included

allegations about the industry as a whole sufficient to put the government on notice of

the claims in this case.  Specifically, *Bass* not only set forth a nearly identical alleged

scheme, but also explained that the same use of gift cards in exchange for transferred

prescriptions was an industry-wide practice:

- "Providers of pharmacy services compete for the opportunity to fill
  customers' prescriptions.  In order to obtain a competitive advantage in
  obtaining customers' business, a number of pharmacies have relied upon

---

[2]  Each of the State FCAs includes a similar first-to-file rule.  *See* Cal. Gov't Code §
12652(c)(10); Del. Code Ann. tit. 6 § 1203(5); D.C. Code § 2-381.03(b)(6); Fla.
Stat. Ann. § 68.083(7); Ga. Code Ann. § 49-4-168.2(c)(6); Haw. Rev. Stat. § 661-
25(e); 740 Ill. Comp. Stat. § 175/4(b)(5); Ind. Code Ann. § 5-11-5.5-4(g); La.
Rev. Stat. Ann. § 46:439.2(A)(3); Mass. Gen. Laws Ann. ch. 12, § 5C(6); Mich.
Comp. Laws Ann. § 400.160a(4); Nev. Rev. Stat. Ann. § 357.080(2); N.H. Rev.
Stat. Ann. § 167:61-c(II)(b); N.J. Stat. Ann. § 2A:32C-5(i); N.M. Stat. Ann. § 44-
9-5(E); Okla. Stat. Ann. tit. 63, § 5053.2(B)(5); R.I. Gen. Laws Ann. § 9-1.1-
4(b)(5); Tenn. Code Ann. § 4-18-104(c)(10); Tex. Hum. Res. Code Ann. § 36.106;
Va. Code Ann. § 8.01-216.5(E); Wis. Stat. Ann. § 20.931(5)(e) (2007).

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

specific incentives like gift cards and other discounts to encourage customers to transfer their business." *United States ex rel. Bass, et al. v. Walgreen Co.*, No. 5:08-cv-13827-JCO-MJH, DE 1 (Complaint) ¶ 14.

- "Pharmacies that provide discounts as incentives for customers to transfer pharmacies leads to customers 'pharmacy hopping' with the goal that the pharmacy providing the discount will retain the customers' future business." *Id.* ¶ 15.

- Bass's job duties included "transferring prescriptions from other pharmacies, such as Rite Aid, CVS, Wal-Mart, and independent pharmacies," *id.* ¶ 29, and, in listing specific instances of alleged remuneration to government beneficiaries, the Complaint noted that a number of the patient transfers came from CVS, *see id.* ¶¶ 72D, 72E, 72J, 72K.

The first-to-file rule is designed is to prevent duplicative claims that do not provide notice of new frauds to the government. *See United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1188 (9th Cir. 2001) ("a goal behind the first-to-file rule" is "promptly alert[ing] the government to the essential facts of a fraudulent scheme"). For that reason, numerous courts have recognized that the first-to-file bar applies even if the defendant was not named in the earlier-filed case, "as long as the two complaints identify the same general fraudulent scheme." *United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 517 (6th Cir. 2009) ("[T]he fact that the later action names different or additional defendants is not dispositive. . . ."); *see also, e.g.*, *United States ex rel. Branch Consultants v. Allstate Ins.*, 560 F.3d 371, 380 (5th Cir. 2009) ("[T]here might be situations in which the allegations in a first-filed complaint pertain to such a narrow or readily-identifiable group of potential wrongdoers that § 3730(b)(5) acts to bar subsequent allegations against previously unnamed defendants."); *United States ex rel. Szymoniak v. ACE Sec. Corp.*, 2014 WL 1910876, at *5 (D.S.C. May 12, 2014) (first-to-file rule applied where later-filed case included new defendants and first-filed case had alleged "industry-wide fraud" that "put the government on notice to investigate the fraudulent scheme alleged later in the

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

[subsequent] case").[3]   The bar therefore applies whenever "the first-filed complaint provided 'enough information to discover' the fraud alleged in the second-filed complaint, including the identity of the new defendants."   *United States ex rel. Denis v. Medco Health Sols., Inc.*, 2017 WL 63006, at *10 (D. Del. Jan. 5, 2017) (quoting *Szymoniak*, 2014 WL 1910876, at *5).[4]   That standard is satisfied here, and the first-to-file rule bars Relator's claims.

Nor did this defect disappear after *Bass* was settled and dismissed in 2012. The first-to-file rule's "plain language" looks to whether the earlier-filed action "was pending when [the Relator] brought her claim."   *Lujan*, 243 F.3d at 1188; *see also, e.g.*, *United States ex rel. Shea v. Verizon Commc'ns, Inc.*, 160 F. Supp. 3d 16, 29 (D.D.C. 2015) ("[T]he language of § 3730(b)(5) itself, nevertheless, requires the

---

[3]   The Court should not follow the minority rule adopted by the Tenth Circuit, which suggested that "[t]wo complaints can allege the very same scheme to defraud the very same victim, but they are not the same claim unless they share common defendants."   *In re Natural Gas Royalties Qui Tam Litig.*, 566 F.3d 956, 962 (10th Cir. 2009).   Such a rule would be inconsistent with the Ninth Circuit's holding that the first-to-file rule's "plain language refers to 'related' not 'identical' actions," and that requiring identical actions would also "be contrary to the . . . legislative intent" behind the provision.   *Lujan*, 243 F.3d at 1189; *see also United States ex rel. Denis v. Medco Health Sols., Inc.*, 2017 WL 63006, at *11 n.12 (D. Del. Jan. 5, 2017) (finding the Tenth Circuit rule "unpersuasive" as it is "contrary to the Third Circuit's pronouncements . . . to apply the first-to-file bar broadly and not require 'identical facts'" (quoting *United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 232–34 (3d Cir. 1998))).

[4]   An "analogy to the first-to-file situation" can be found in case law interpreting the FCA's public-disclosure bar, *Branch Consultants*, 560 F.3d at 380, where the Ninth Circuit has recognized that allegations regarding "a narrow class of suspected wrongdoers" that do not name a particular defendant may be sufficient to give the government notice of the allegations.   *See United States v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014, 1019 (9th Cir. 1999) (government's "ready access" to the identity of the members of that narrow class "makes it highly likely that the government could easily identify the contractors at issue").

---

7

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

Court to look to the moment when Plaintiff filed his initial Complaint . . . .").[5]  For that same reason, the "plain text" makes clear that Relator's subsequent filing of an amended complaint "will not cure the first-to-file bar," either.  *United States ex rel. Carter v. Halliburton Co.*, 144 F. Supp. 3d 869, 880 (E.D. Va. 2015), *as modified on denial of reconsideration*, 315 F.R.D. 56 (E.D. Va. 2016); *see also Shea*, 160 F. Supp. 3d at 30 ("The first-to-file bar prohibits bringing a 'related *action*,' not a related *complaint*."  (quoting 31 U.S.C. § 3730(b)(5))).  Furthermore, because the first-to-file rule is "jurisdictional," *Hartpence*, 792 F.3d at 1130, its applicability must be determined by "look[ing] to the original, rather than to the amended, complaint," *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988); *see also Carter*, 144 F. Supp. 3d at 881 ("It is consistent with a jurisdictional limitation to apply the first-to-file bar at the time the initial complaint is filed, rather than when the complaint is amended.").  For these reasons, although a case should not be dismissed *with prejudice* under the first-to-file rule when the earlier-filed case was subsequently dismissed, *Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*, 135 S. Ct. 1970, 1979 (2015), courts have held that amending the complaint after the first-filed case is dismissed does not cure a first-to-file defect and that such cases should therefore be dismissed without prejudice, *e.g.*, *United States ex rel. Palmieri v. Alpharma, Inc.*, 2016 WL 7324629, at *11 (D. Md. Dec. 16, 2016) (finding a case "barred at its inception by the first-to-file rule" where an earlier-filed case "was pending when this case began" and subsequently dismissed); *United States v. Unisys Corp.*, 178 F. Supp. 3d 358, 374 (E.D. Va. 2016)

---

[5]  This also comports with the purpose of the first-to-file rule because, "[d]ismissed or not, [the first-filed action] promptly alerted the government to the essential facts of a fraudulent scheme."  *Lujan*, 243 F.3d at 1188.

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

("[A]n amendment cannot cure the jurisdictional fact that this action commenced during the pendency of a factually related case.").[6]

### B.   Relator's Claim Does Not Satisfy the Jurisdictional Requirements of the New Hampshire False Claims Act.

Relator's claim under the New Hampshire False Claims Act, N.H. Rev. Stat. Ann. §§ 167:58–61-e, is also subject to dismissal under that law's particular jurisdictional requirements.  The New Hampshire law conditions any court's "jurisdiction over an action brought by a relator" on a showing that the defendant either "(1) has its principal place of business within the state or (2) during the 12-month period immediately preceding the date the action is filed, received reimbursement from the Medicaid program of this state . . . equal to 10 percent or more of the defendant's aggregate reimbursement from all state medical assistance programs governed by Title XIX of the Social Security Act."  N.H. Rev. Stat. Ann. § 167:61-c(II)(a).  CVS meets neither of these jurisdictional requirements, and the SAC does not even allege compliance with them.  The Court therefore lacks jurisdiction over this claim.

---

[6]   The courts to hold otherwise have failed to grapple with the plain-language of the first-to-file rule or the impact of its jurisdictional nature.  *See Medco*, 2017 WL 63006, at *12 ("the reasoning in each of these cases does not hold up under scrutiny," including in their failure to grapple fully with the import of the rule's plain language (citing *United States ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1 (1st Cir. 2015), *cert. denied*, 136 S. Ct. 2517 (2016); *United States ex rel. Brown v. Pfizer, Inc.*, 2016 WL 807363 (E.D. Pa. Mar. 1, 2016))); *see also Unisys Corp.*, 178 F. Supp. 3d at 372–73 (*Gadbois* is "in tension" with the rule that jurisdiction is assessed with "the state of affairs at the time of commencement" and contrary to the first-to-file rule's "plain text").  A recent decision from the Southern District of New York suffers from a similar set of problems, and that court also emphasized the fact that in the Second Circuit—unlike in the Ninth Circuit—the first-to-file rule is not jurisdictional.  *See United States ex rel. Wood v. Allergan, Inc.*, ___ F. Supp. 3d ___, 2017 WL 1233991, at *10–15 (S.D.N.Y. Mar. 31, 2017).

9

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

## II.     RELATOR'S ALLEGATIONS DO NOT STATE A CLAIM ON THE MERITS.

### A.     The Complaint Does Not State a Claim Under the FCA.

Rule 9(b) "imposes a heightened pleading standard on fraud claims," *Blue Water Boating Inc. v. Plains All Am. Pipeline, L.P.*, 2017 WL 405425, at *8 (C.D. Cal. Jan. 26, 2017), including claims under the FCA, *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).  "This means the plaintiff must allege 'the who, what, when, where, and how of the misconduct charged,' including what is false or misleading about a statement, and why it is false."  *United States v. United Healthcare Ins.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)).  Furthermore, because "an actual false claim is the *sine qua non* of a False Claims Act violation," *United States ex rel. Aflatooni v. Kitsap Physicians Serv.*, 314 F.3d 995, 1002 (9th Cir. 2002) (internal quotation marks omitted), a complaint must "'allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted,'" *United Healthcare*, 848 F.3d at 1180 (quoting *Ebeid*, 616 F.3d at 998–99).

Relator alleges that CVS offered a promotion under which it provided $25 gift cards to patients in exchange for them transferring their prescriptions to CVS, and that this promotion specifically excluded government beneficiaries, in writing, on the advertisements and coupons related to it.  *See* SAC ¶ 12.  Relator's apparent theory is that, notwithstanding this government-beneficiary exclusion, CVS, "on a nationwide basis," allowed such beneficiaries to participate, *id.* ¶ 15, and has done so for fifteen years, *id.* ¶ 11.  Nowhere in the SAC does Relator provide any non-conclusory allegation to support the speculation that there was such a "nationwide" practice of deviating from the stated exclusion.  He makes no allegation regarding any policy, practice, or other directive that could plausibly support the existence of such a scheme under Federal Rule of Civil Procedure 8(a), much less the "'particular details

10

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

of a scheme to submit false claims'" on a nationwide basis. *United Healthcare*, 848 F.3d at 1183 (quoting *Ebeid*, 616 F.3d at 998–99). This alone is fatal to his claims, as Rule 9(b) requires that "both the fraudulent scheme and the submission of false claims must be pled with a high degree of particularity." *United States ex rel. Kester v. Novartis Pharm. Corp.*, 23 F. Supp. 3d 242, 255 (S.D.N.Y. 2014). Indeed, courts have rejected attempts to use similar "'suggestive or conclusory allegations' to move forward" with allegations of nationwide fraud even in cases—unlike this one—in which a fraudulent scheme was pleaded with particularity on a smaller scale. *United States ex rel. Acad. Health Ctr., Inc. v. Hyperion Found., Inc.*, 2014 WL 3385189, at *33 (S.D. Miss. July 9, 2014) (citation omitted) (dismissing "allegations regarding a nationwide pattern of conduct" where Relator pleaded an allegedly fraudulent course of conduct at a single facility and alleged other events occurring in other states, but "lack[ed] particular details" to support the nationwide allegation); *see also United States ex rel. Woods v. SouthernCare, Inc.*, 2013 WL 1339375, at *5–6 (S.D. Miss. Mar. 30, 2013) (dismissing allegation of "company-wide fraud" where relators premised their claim on insider knowledge of an allegedly fraudulent scheme in a particular location and sought to tie the allegation to nationwide conduct through vague suggestions of company-wide statements and practices devoid of support for the proposition that they constituted a nationwide implementation by the company); *United States ex rel. Jorgenson v. Alan Ritchey, Inc.*, 2007 WL 1287932, at *3 (W.D. Wash. Apr. 27, 2007) (dismissing allegations regarding fraud at company locations other than the one about which the relator asserted insider knowledge because "alleged fraudulent activity at one plant does not constitute an allegation for a different plant").

Relator's allegations regarding the isolated actions of employees at four CVS pharmacy locations (one in Alabama, two in Florida, and one in Pennsylvania), out of CVS's nearly ten thousand pharmacy locations nationwide, are insufficient to state "'particular details of a scheme to submit false claims.'" *United Healthcare*, 848

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

F.3d at 1183 (quoting *Ebeid*, 616 F.3d at 998–99).  Whether based on Relator's own "investigation," or information purportedly provided by CVS "insiders"—low-level pharmacy employees who terminated employment with CVS eleven and eight years ago, SAC ¶¶ 15A, 15B, 15C, 16–17—none of the SAC's allegations supports Relator's conclusory and unexplained assumption that CVS had a fifteen-year-long nationwide practice of providing gift cards to government beneficiaries.  Three instances in which individuals striving to construct or bolster an FCA lawsuit were able (after an unknown number of attempts) to demand a gift card and a single alleged statement by a local District Manager do not plausibly show that CVS had a secret nationwide policy of deviating from its own government-beneficiary exclusion.

Finally, Relator's allegations regarding Paula Zorek's time in Pennsylvania are far too vague and overbroad to support his claim of a nationwide scheme.  Relator alleges that Zorek worked for a CVS pharmacy "from the late 1980s until 2006" and that "during her tenure" she observed an alleged practice of providing gift cards to government beneficiaries.  *See* SAC ¶ 16.  The allegation that these observations occurred over a nearly twenty-year period is far too vague to satisfy Rule 9(b).  *See United States ex rel. Modglin v. DJO Glob. Inc.*, 114 F. Supp. 3d 993, 1016–17 (C.D. Cal. 2015) (dismissing allegations under Rule 9(b) in part because they "fail[ed] to state with particularity" when the alleged events occurred), *aff'd* ___ F. App'x ___, 2017 WL 745715 (9th Cir. Feb. 27, 2017).  And, Relator does not contend that Zorek claims that anyone in CVS management directed her, or anyone else, to violate the company's stated policies.

Relator's FCA claim should be dismissed in its entirety under Rules 9(b) and 8(a).  In the alternative, the Court at a minimum should limit Relator's claims to the allegations that he has actually made—regarding two CVS pharmacy locations in Florida (in 2008 or 2009), one in Alabama (in April 2009), and one in Pennsylvania (in April 2014).  In no event should the Court permit Relator to proceed with an entirely conclusory and unsupported claim that CVS had a fifteen-year-long

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

nationwide scheme across nearly ten thousand pharmacy locations. *See United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 510, 514–15 (6th Cir. 2007) (allowing a relator to proceed only with respect to a claim that false claims had been submitted "with respect to" a particular patient because "the examples that a relator provides will support more generalized allegations of fraud ***only*** to the extent that the relator's examples are *representative samples* of the broader class of claims." (first emphasis added)). At worst, Relator's allegations are subject to the "'obvious alternative explanation[],'" *United States ex rel. Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1056 (9th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007)), that a handful of low-level employees at a handful of stores occasionally made a mistake in not enforcing CVS's stated exclusion of government beneficiaries from the program. Such allegations do not support *any* FCA claim, and they certainly do not support a claim regarding any pharmacies other than those identified by Relator during the time periods of his specific allegations. After all, "alleged fraudulent activity at one [pharmacy] does not constitute an allegation for a different [pharmacy]." *Jorgenson*, 2007 WL 1287932, at *3; *see also Woods*, 2013 WL 1339375, at *5–6 (dismissing allegation of "company-wide fraud" where relators had insider knowledge of activity in a particular location only and made only vague allegations to support their assumption that similar activity happened across the company); *cf. United States v. Aurora Las Encinas, LLC*, 2012 WL 12897081, at *4–5 (C.D. Cal. Sept. 6, 2012) (affirming a magistrate judge's order limiting discovery to "patients specifically identified" in the complaint, premised upon the need to enforce the protections of Rule 9(b)).

## B. The Complaint Does Not State a Claim Under the State FCAs.

Relator's State FCA claims also do not satisfy Rule 9(b) because Relator has not alleged any facts connecting any allegedly false claims to the states. A plaintiff bringing claims under state FCAs "must allege some specificity *with respect to each asserted state* and cannot rely upon generalized pleadings." *United States ex rel.*

*Nowak v. Medtronic, Inc.*, 806 F. Supp. 2d 310, 357 (D. Mass. 2011) (emphasis added). For that reason, courts regularly dismiss state-FCA claims where the complaint lacks allegations regarding the particular state. *See United States ex rel. Lawton v. Takeda Pharm. Co.*, 842 F.3d 125, 132 (1st Cir. 2016) (affirming dismissal of 28 state-FCA claims where the complaint "only contains allegations that false claims were submitted to New York State authorities in violation of the New York State False Claims Act"); *United States v. N. Am. Health Care, Inc.*, 173 F. Supp. 3d 943, 953 (N.D. Cal. 2016) (dismissing a Washington FCA claim where "there are no facts [contained] in the [complaint] regarding fraud committed under the Washington State FCA, other than the broad allegations . . . that '[u]pon information and belief, Defendants' actions described herein occurred in the State of Washington as well'" (fourth alteration in original) (citation omitted)); *United States ex rel. Kroening v. Forest Pharm., Inc.*, 155 F. Supp. 3d 882, 896–97 (E.D. Wis. 2016) ("[C]laims under companion state false claims statutes must *each* be supported with details sufficient to satisfy the particularity required under Rule 9(b)." (emphasis added)); *Foglia v. Renal Ventures Mgmt., LLC*, 830 F. Supp. 2d 8, 22–23 (D.N.J. 2011) (dismissing Texas FCA claim where the relator had been employed by the defendant in New Jersey and made allegations only regarding "his observations in Sewell, New Jersey").

Relator's allegations do not suggest that a single allegedly false claim was submitted to any of the Medicaid programs of any of the twenty-one states whose laws he invokes. With the exception of Florida, Relator does not plead **anything** about those states, other than a vague and conclusory assertion, repeated for each state, that "[b]y virtue of the above-described acts, among others, CVS has knowingly submitted, and continues to submit, directly or indirectly, to officers, employees or agents of the State . . . false Medicaid claims for payment or approval for prescription drugs in violation of the [State FCA]." DE 121 (SAC) ¶¶ 20, 22, 24, 26, 28, 30, 32, 34, 36, 38, 40, 42, 44, 46, 48, 50, 52, 54, 56, 58, 60. Such conclusory allegations "do not even come close to satisfying the pleading requirements." *United States ex rel.*

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Hagerty v. Cyberonics, Inc.*, 95 F. Supp. 3d 240, 270–71 (D. Mass. 2015) (dismissing 25 state-FCA claims that included similar conclusory allegations, where, for 18 of the states, the complaint had "no allegations . . . of fraudulent conduct or false claims beyond the conclusory allegations" and, for the other seven, it had "barely any mention of fraudulent activity"), *aff'd*, 844 F.3d 26 (1st Cir. 2016).

Nor do Relator's allegations regarding events occurring in Florida provide a basis for a claim under the Florida False Claims Act.  Relator identifies only a single claim for payment that even arguably relates to Florida, submitted on behalf of his mother-in-law, whom he alleges "was a beneficiary of a ***federally*** funded health care program and the pharmacy billed the ***federal*** program for the prescription drug."  DE 121 (SAC) ¶ 15A (emphases added).  The SAC contains nothing to suggest that Relator's mother-in-law was enrolled in Medicaid, much less that Florida's Medicaid program—or that of any other state—was billed for the transaction.  In sum, Relator alleges nothing to suggest that any claim for payment was submitted to any of the twenty-one states whose FCAs he invokes.  This is insufficient to plead the necessary "'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'"  *United Healthcare*, 848 F.3d at 1183 (quoting *Ebeid*, 616 F.3d at 998–99).  Relator's State FCA claims should therefore be dismissed.

## CONCLUSION

This eight-year litigation should be brought to a close.  Relator is not a whistleblower and has no inside information about any of CVS's activities; rather, he is a competitor who relies entirely on three isolated instances in which CVS allegedly provided gift cards to ineligible individuals—in transactions evidently ginned up by Relator himself and a former employee whose husband was then embroiled in litigation against CVS—to support his threadbare claims of a nationwide fraudulent scheme.  The government was already alerted to the allegations Relator now— vaguely—raises by a nearly identical lawsuit filed in 2008, and accordingly Relator's

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

1  claims are barred by the first-to-file rule.  But in any event, Relator's lack of any real

2  information to support his allegations dooms both his FCA and State FCA claims

3  under Rule 9(b).  This case should be dismissed in its entirety.

5  Dated:  June 21, 2017

6                                        Respectfully Submitted,

7                                        **SPERTUS, LANDES & UMHOFER, LLP**

9                             By:   _____/s/_____
                                        Matthew D. Umhofer

11                                       WILLIAMS & CONNOLLY LLP
                                        Enu Mainigi*
12                                       Holly Conley*
                                        Benjamin Hazelwood*
13                                       *Admitted pro hac vice

15                                       *Attorneys for Defendant CVS Pharmacy, Inc.*

---

16

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT