**SPERTUS, LANDES & UMHOFER, LLP**
1990 S. Bundy Drive #705
Los Angeles, CA 90025
Telephone: 310.826.4700
Facsimile: 310.826.4711
Matthew Donald Umhofer (SBN 206607)
matthew@spertuslaw.com

**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: 202.434.5000
Facsimile: 202.434.5029
Enu Mainigi (admitted pro hac vice)
emainigi@wc.com
Holly Conley (admitted pro hac vice)
hconley@wc.com
Anne Rucker (admitted pro hac vice)
arucker@wc.com
Benjamin Hazelwood (admitted pro hac vice)
bhazelwood@wc.com
James Kirkpatrick (admitted pro hac vice)
jkirkpatrick@wc.com

*Attorneys for Defendant CVS Pharmacy, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* JACK CHIN,<br><br>Plaintiff,<br>v.<br><br>CVS PHARMACY, INC.,<br><br>Defendant. | Case No.: CV 09-1293-PSG<br><br>**DEFENDANT CVS PHARMACY, INC.'S RULE 56.1 STATEMENT OF UNCONTROVERTED FACTS [REDACTED-PROPOSED TO BE FILED UNDER SEAL]**<br><br>Date: March 11, 2019<br>Time: 1:30 p.m.<br>Courtroom: 6A<br><br>Assigned to Hon. Philip S. Gutierrez |

CVS PHARMACY, INC.'S RULE 56.1 STATEMENT OF UNCONTROVERTED FACTS

| CVS'S UNDISPUTED MATERIAL FACTS | EVIDENCE SUPPORTING CVS'S UNDISPUTED MATERIAL FACTS |
|---|---|
| 1. Transfer-coupon promotions were common in the retail-pharmacy industry in the mid-2000s. | Hazelwood Decl. Ex. 21 (Dietz Rep.) ¶ 22; Hazelwood Decl. Ex. 22 (Barron Dep.) at 44:17–45:5; Hazelwood Decl. Ex. 23 (P. Zorek Dep.) at 18:18–20; Hazelwood Decl. Ex. 24 (Morales Dep.) at 29:3–7. |
| 2. By approximately 2005, CVS had begun issuing transfer coupons. | Hazelwood Decl. Ex. 22 (Barron Dep.) at 44:22–45:5; Hazelwood Decl. Ex. 25 (Simmons Dep.) at 20:3–7. |
| 3. CVS honored its competitors' transfer coupons. | Hazelwood Decl. Ex. 22 (Barron Dep.) at 69:8–11; Hazelwood Decl. Ex. 27 (Sciarra Dep.) at 331:18–21; Hazelwood Decl. Ex. 24 (Morales Dep.) at 68:5–11, 69:22–23. |
| 4. CVS distributed transfer coupons via a number of vehicles, including newspapers, circulars, and direct mail. | Hazelwood Decl. Ex. 22 (Barron Dep.) at 51:14–22, 52:10–14, 63:19–64:15. |
| 5. CVS's transfer-coupon campaigns were generally targeted in geographic scope and limited in duration. | Hazelwood Decl. Ex. 22 (Barron Dep.) at 38:9–25; Hazelwood Decl. Ex. 26 (Baanante Dep.) at 35:1–12, 37:2–15, 182:17–18; *e.g.*, Dudley Decl. Ex. 1 (CVS-Chin_1062011); Dudley Decl. Ex. 2 (CVS-Chin_1061359). |
| 6. In 2010, CVS generally stopped offering transfer coupons. | Hazelwood Decl. Ex. 22 (Barron Dep.) at 156:16–24, 163:5–8; Hazelwood Decl. Ex. 25 (Simmons Dep.) at 20:11–23:18. |
| 7. After 2010, CVS continued to honor competitors' transfer coupons. | Hazelwood Decl. Ex. 22 (Barron Dep.) at 69:8–11; Hazelwood Decl. Ex. 27 (Sciarra Dep.) at 331:18–21; Hazelwood Decl. Ex. 24 (Morales Dep.) at 68:10–11, 69:22–23; Dudley Decl. Ex. 16 (CVS-Chin_1063982). |

| | | |
|---|---|---|
| 1-7 | 8. At all times, CVS took the position that transfer coupons could not be redeemed for prescriptions paid for by government healthcare programs. These programs included Medicare, Medicaid, and Tricare. | Dudley Decl. Ex. 3 (CVS-Chin_1180352); Dudley Decl. Ex. 4 (CVS-Chin_1180356); Hazelwood Decl. Ex. 25 (Simmons Dep.) at 31:25–32:10, 62:25–63:12; Hazelwood Decl. Ex. 28 (Simmons Testimony) (CVS-Chin_1181017), at 14:4–17:12; Hazelwood Decl. Ex. 26 (Baanante Dep.) at 69:22–70:15; Hazelwood Decl. Ex. 27 (Sciarra Dep.) at 64:23–66:16. |
| 8-11 | 9. Not a single witness testified that any CVS employee ever permitted an ineligible redemption with criminal intent. | |
| 12-16 | 10. At all times, CVS took robust steps to ensure that transfer coupons could not be redeemed by government beneficiaries. | Hazelwood Decl. Ex. 28 (Simmons Testimony) (CVS-Chin_1181017), at 14:4–17:12, 46:7–19; Hazelwood Decl. Ex. 26 (Baanante Dep.) at 69:22–70:15. |
| 17-20 | 11. CVS had every reason to believe the steps it took to ensure that transfer coupons were not redeemed by government beneficiaries were effective. | Hazelwood Decl. Ex. 28 (Simmons Testimony) (CVS-Chin_1181017), at 33:1–21; Hazelwood Decl. Ex. 21 (Dietz Rep.) at ¶¶ 29–42; Hazelwood Decl. Ex. 24 (Morales Dep.) at 60:4–62:18. |
| 21-27 | 12. CVS-issued transfer coupons included express language stating the government beneficiary exclusion. | Hazelwood Decl. Ex. 26 (Baanante Dep.) at 69:22–70:15, 120:20–24; Hazelwood Decl. Ex. 24 (Morales Dep.) at 44:19–25; Hazelwood Decl. Ex. 23 (P. Zorek Dep.) at 79:20–22; Hazelwood Decl. Ex. 28 (Simmons Testimony) (CVS-Chin_1181017), at 14:4–17:12; Hazelwood Decl. Ex. 27 (Sciarra Dep.) at 64:23–66:16. |

2
CVS PHARMACY, INC.'S RULE 56.1 STATEMENT OF UNCONTROVERTED FACTS

| | | |
|---|---|---|
| 13. | The exclusion printed on CVS's transfer coupons contained the following (or similar) language: "This coupon not valid for prescriptions paid for in whole or in part by state and/or federal health care programs. This includes programs such as Medicare, Medicaid and TriCare." | Dudley Decl. Ex. 5 (CVS-Chin_0201519); Hazelwood Decl. Ex. 26 (Baanante Dep.) at 120:23–24; Hazelwood Decl. Ex. 24 (Morales Dep.) at 44:19–25; Hazelwood Decl. Ex. 27 (Sciarra Dep.) at 65:24–67:25; Hazelwood Decl. Ex. 29 (Chin Dep.) at 57:25–58:20. |
| 14. | CVS consistently required its employees to comply with the government beneficiary exclusion. | *E.g.*, Dudley Decl. Ex. 6 (CVS-Chin_1063996); Dudley Decl. Ex. 1 (CVS-Chin_1062011); Dudley Decl. Ex. 2 (CVS-Chin_1061359); Dudley Decl. Ex. 7 (CVS-Chin_0283025); Dudley Decl. Ex. 8 (CVS-Chin_0072727); Dudley Decl. Ex. 9 (CVS-Chin_0831016); Dudley Decl. Ex. 10 (CVS-Chin_1057089); Dudley Decl. Ex. 11 (CVS-Chin_1060168); Dudley Decl. Ex. 12 (CVS-Chin_1061932); Dudley Decl. Ex. 13 (CVS-Chin_1062943); Hazelwood Decl. Ex. 28 (Simmons Testimony) (CVS-Chin_1181017), at 14:4–17:12, 46:7–19; Hazelwood Decl. Ex. 25 (Simmons Dep.) at 42:19–43:11; Hazelwood Decl. Ex. 27 (Sciarra Dep.) at 69:6–15. |
| 15. | When a transfer-coupon campaign was going to be run in a given geographic area, CVS's marketing and pharmacy operations teams worked together to notify managers for the impacted areas and each individual pharmacy in the area that transfer coupons were being issued and reminding them of the government beneficiary exclusion. | Dudley Decl. Ex. 14 (CVS-Chin_1159370); Dudley Decl. Ex. 1 (CVS-Chin_1062011); Dudley Decl. Ex. 2 (CVS-Chin_1061359); Hazelwood Decl. Ex. 25 (Simmons Dep.) at 54:1–5; Hazelwood Decl. Ex. 27 (Sciarra Dep.) at 69:6–15, 106:14–107:19, 108:18–109:1; Hazelwood Decl. Ex. 24 (Morales Dep.) at 29:16–19, 31:10–19, 60:10–21, 62:11–18, 71:21–24; Hazelwood Decl. Ex. 26 (Baanante Dep.) at 83:25–85:6. |

| | | |
|---|---|---|
| | 16. Store-level pharmacy managers were expected to inform their employees of the government-beneficiary exclusion, and by all accounts did so. | Hazelwood Decl. Ex. 30 (J. Zorek Dep.) at 34:20–35:24; Hazelwood Decl. Ex. 23 (P. Zorek Dep.) at 172:22–173:15; Hazelwood Decl. Ex. 27 (Sciarra Dep.) at 106:14–107:19, 108:18–109:1; Hazelwood Decl. Ex. 24 (Morales Dep.) at 72:2–10, 31:10–19, 60:10–21, 62:11–18; Dudley Decl. Ex. 1 (CVS-Chin_1062011); Dudley Decl. Ex. 2 (CVS-Chin_1061359); Hazelwood Decl. Ex. 28 (Simmons Testimony) (CVS-Chin_1181017), at 14:4–17:12, 46:7–19. |
| | 17. Where possible, such as for direct mail, CVS screened out individuals from its promotions who may be more likely to be ineligible government beneficiaries, such as individuals over 65 years of age. | Hazelwood Decl. Ex. 26 (Baanante Dep.) at 95:20–97:18. |
| | 18. Every CVS witness that was asked testified that CVS consistently and explicitly excluded government beneficiaries from its transfer-coupon marketing activities. | Hazelwood Decl. Ex. 26 (Baanante Dep.) at 94:3–97:18; Hazelwood Decl. Ex. 22 (Barron Dep.) at 108:11–109:13; Hazelwood Decl. Ex. 31 (Chu Dep.) at 52:10–53:12; Hazelwood Decl. Ex. 24 (Morales Dep.) at 44:19–25; Hazelwood Decl. Ex. 27 (Sciarra Dep.) at 65:2–66:16; Hazelwood Decl. Ex. 25 (Simmons Dep.) at 100:18–20. |
| | 19. CVS only occasionally included transfer coupons in broader promotions that were aimed at groups that included individuals aged 55 and older. | Hazelwood Decl. Ex. 26 (Baanante Dep.) at 94:3–97:18. |
| | 20. There is no evidence that CVS ever targeted its transfer coupon promotions to government beneficiaries. | |

| # | | |
|---|---|---|
| | 21. CVS's marketing team reasonably relied on the fact that both the corporate-level pharmacy operations team and pharmacists and pharmacy staff were aware of the government beneficiary exclusion and were enforcing it. | Dudley Decl. Ex. 1 (CVS-Chin_1062011); Dudley Decl. Ex. 2 (CVS-Chin_1061359); Hazelwood Decl. Ex. 25 (Simmons Dep.) at 31:25–32:10, 62:25–63:12; Hazelwood Decl. Ex. 28 (Simmons Testimony) (CVS-Chin_1181017), at 14:4–17:14; Hazelwood Decl. Ex. 27 (Sciarra Dep.) at 69:6–15, 103:4–104:4. |
| | 22. CVS pharmacy staff enforced the government beneficiary exclusion on a day-to-day basis, and were well-equipped to do so. | Hazelwood Decl. Ex. 24 (Morales Dep.) at 36:17–37:6, 40:24–41:14, 53:6–24; Hazelwood Decl. Ex. 25 (Simmons Dep.) at 29:17–36:4; Hazelwood Decl. Ex. 21 (Dietz Rep.) at ¶¶ 29–42. |
| | 23. Pharmacy staff regularly process coupons of all kinds, and would follow a standard practice of reviewing the coupon and ensuring that the relevant inclusion and exclusion criteria were met. | Hazelwood Decl. Ex. 24 (Morales Dep.) at 36:17–37:6, 40:24–41:14; Hazelwood Decl. Ex. 21 (Dietz Rep.) ¶¶ 22–26; Hazelwood Decl. Ex. 25 (Simmons Dep.) at 29:17–36:4. |
| | 24. With respect to transfer coupons, the pharmacy staff member would check the third-party plan covering the prescription to determine whether it was a government-funded prescription plan that prohibited coupons. | Hazelwood Decl. Ex. 24 (Morales Dep.) at 40:24–41:14; Hazelwood Decl. Ex. 25 (Simmons Dep.) at 32:16–33:24. |
| | 25. If the payor was an eligible plan, pharmacy staff would then activate a gift card and provide it to the customer. | Hazelwood Decl. Ex. 24 (Morales Dep.) at 36:17–39:14, 40:24–41:14; Hazelwood Decl. Ex. 21 (Dietz Rep.) ¶¶ 25–26; Hazelwood Decl. Ex. 25 (Simmons Dep.) at 29:17–36:4. |

| | | |
|---|---|---|
| 1 2 3 4 5 | 26. Pharmacy personnel were trained to look at the information printed on the prescription label stapled to the prescription bag. | Hazelwood Decl. Ex. 24 (Morales Dep.) at 35:3–37:6, 40:24–41:14, 43:3–7, 46:8–47:19, 41:4–10, 56:6–9; Hazelwood Decl. Ex. 25 (Simmons Dep.) at 32:16–33:24. |
| 6 7 8 9 | 27. The prescription label stapled to the prescription bag included both the "Condor Code" associated with the specific insurance plan paying for the prescription and CVS's designated name for that plan. | Hazelwood Decl. Ex. 21 (Dietz Rep.) ¶ 40; Hazelwood Decl. Ex. 32 (Colbert Dep.) at 21:15–25; Hazelwood Decl. Ex. 33 (Torpy Dep.) at 29:20–30:18; Hazelwood Decl. Ex. 28 (Simmons Testimony) (CVS-Chin_1181017), at 70:17–71:4. |
| 10 11 12 13 14 | 28. The names printed on the prescription label for Medicare Part D plans began with the unique acronym "PDP," for Part D Plan. | Hazelwood Decl. Ex. 24 (Morales Dep.) at 40:24–41:14, 42:11–25, 43:3–25, 46:8–47:19, 56:6–9; Hazelwood Decl. Ex. 33 (Torpy Dep.) at 172:6–23; Hazelwood Decl. Ex. 28 (Simmons Testimony) (CVS-Chin_1181017), at 70:17–71:4. |
| 15 16 17 18 19 | 29. Medicaid plans generally included the word "Medicaid" in the plan name on the label. | Hazelwood Decl. Ex. 24 (Morales Dep.) at 46:8–47:17. |
| 20 21 22 23 24 25 26 27 28 | 30. It is easy for pharmacists and pharmacy technicians to find the identity of the payor for a prescription. | Hazelwood Decl. Ex. 34 (Stein Dep.) at 117:4–15 ("[A] pharmacist, pharmacy tech, or pharmacy clerk . . . would probably know what the third-party payer was based on that information on the label."); Hazelwood Decl. Ex. 29 (Chin Dep.) at 63:15–64:7 (noting that payer information is clear from insurance cards); *id.* at 165:13–166:15 (agreeing that it "would be a good indication" that a particular insurance was Medicare Part D insurance if the Condor Code began with the acronym "PDP" and stating that "after experience and time, I rapidly learned the |

6
CVS PHARMACY, INC.'S RULE 56.1 STATEMENT OF UNCONTROVERTED FACTS

| | | |
|---|---|---|
| | | BIN numbers" that corresponded to specific government insurance); Hazelwood Decl. Ex. 25 (Simmons Dep.) at 33:17–24 ("The pharmacist can understand the payer . . . for the prescription looking at the label receipt, where there is an indicator on who has . . . paid for the prescription, or you go into our fulfillment system and look in the patient's profile."); Hazelwood Decl. Ex. 24 (Morales Dep.) at 40:24–41:14, 43:3–7, 46:8–47:19, 41:4–10, 43:11–15, 53:6–24, 56:6–9; Hazelwood Decl. Ex. 33 (Torpy Dep.) at 29:20–30:18; Hazelwood Decl. Ex. 28 (Simmons Testimony) (CVS-Chin_1181017), at 70:17–71:4. |
| 31. | If a CVS pharmacy staff member was presented with an unfamiliar plan, she could look it up in CVS's internal computer system to determine if it was a government-funded insurance plan that did not permit redemption of transfer coupons. | Hazelwood Decl. Ex. 24 (Morales Dep.) at 41:4–10, 43:3–7, 46:8–47:19; Hazelwood Decl. Ex. 21 (Dietz Rep.) ¶ 40; Hazelwood Decl. Ex. 35 (Hamilton Dep.) at 196:6–14 (noting that it takes only "a few key strokes to pull up who the payor is"); Hazelwood Decl. Ex. 25 (Simmons Dep.) at 33:15–33:24; Hazelwood Decl. Ex. 33 (Torpy Dep.) at 29:20–30:18. |
| 32. | Relator's expert admitted that it takes only "a few key strokes to pull up who the payor is." | Hazelwood Decl. Ex. 35 (Hamilton Dep.) at 196:6–14. |
| 33. | If the staff member determined that the customer was using a government health plan, then she would notify the customer that he or she was not eligible for receipt of the gift card. | Hazelwood Decl. Ex. 24 (Morales Dep.) at 41:12–14; Hazelwood Decl. Ex. 21 (Dietz Rep.) ¶ 26. |

| | | |
|---|---|---|
| 1 2 3 4 5 | 34. There is no evidence that CVS employees received corporate instructions to honor all transfer coupons, including by providing gift cards to customers who were ineligible to redeem transfer coupons. | |
| 6 7 8 9 10 11 | 35. CVS had no reason to believe that the measures it took to enforce the government-beneficiary exclusion were ineffective. | Hazelwood Decl. Ex. 24 (Morales Dep.) at 100:24–102:1; Hazelwood Decl. Ex. 28 (Simmons Testimony) (CVS-Chin_1181017), at 23:6–12, 33:1–11, 37:2–14; Hazelwood Decl. Ex. 22 (Barron Dep.) at 229:1–12; Hazelwood Decl. Ex. 27 (Sciarra Dep.) at 145:16–147:4, 149:22–152:1; Hazelwood Decl. Ex. 21 (Dietz Rep.) ¶ 42. |
| 12 13 14 15 | 36. Pharmacists in the stores were consistently enforcing the exclusion and believed the measures they had taken themselves and with their staff were effective. | Hazelwood Decl. Ex. 24 (Morales Dep.) at 100:24–102:1; Hazelwood Decl. Ex. 28 (Simmons Testimony) (CVS-Chin_1181017), at 23:6–12, 33:1–11, 37:2–14. |
| 16 17 18 19 20 21 22 23 24 25 26 27 28 | 37. Corporate employees responsible for marketing and pharmacy operations activities were aware that the company regularly received complaints from customers who were angry that CVS would not let them redeem transfer coupons and believed the procedures in place for enforcing the exclusion were effective. | Hazelwood Decl. Ex. 28 (Simmons Testimony) (CVS-Chin_1181017), at 23:6–12, 33:1–11, 37:2–14; Hazelwood Decl. Ex. 22 (Barron Dep.) at 229:1–12; Hazelwood Decl. Ex. 27 (Sciarra Dep.) at 145:16–147:4, 149:22–152:1; Hazelwood Decl. Ex. 21 (Dietz Rep.) ¶ 42; Dudley Decl. Ex. 16 (CVS-Chin_1103482) at -3494 ("We are a military family and have TRICARE. . . . My husband fights for YOUR freedom and yet we are unable to get the $30 gift card . . . I think you should reconsider that policy. Other pharmacies have not given me any trouble, just yours. Maybe THEY understand that the military fights |

8
CVS PHARMACY, INC.'S RULE 56.1 STATEMENT OF UNCONTROVERTED FACTS

| | |
|---|---|
| | for their lives."); *see also, e.g., id.* at -3505 ("I went to go transfer my Rx's and the Rph is telling me I cannot redeem my gift card because of the type of insurance I carry. The insurance my son has is public aid insurance. That is straight-up discrimination for people on public aid."). |
| 38. There is no evidence that even one of the transactions cited in Chin's Complaint involved any knowing and willful criminal intent by any CVS employee, much less a basis to infer the nationwide scheme Chin alleges. | |
| 39. Chin has no recollection of any details regarding the individuals he claims told him that they had redeemed transfer coupons, and does not know whether those transactions even happened at a CVS pharmacy, as opposed to some other pharmacy. | Hazelwood Decl. Ex. 29 (Chin Dep.) at 54:23–55:2, 61:7–10, 67:25–68:7, 75:7–18, 76:23–80:3. |
| 40. Chin recalled only that approximately ten individuals at Sweetbay told him that they had previously redeemed a coupon from some pharmacy chain, and that one or two showed him gift cards from an unidentified pharmacy chain. | Hazelwood Decl. Ex. 29 (Chin Dep.) at 54:23–55:2, 61:7–10, 75:5–18, 76:23–80:3. |
| 41. Chin does not know whether anyone at the pharmacy knew they were permitting an ineligible redemption or merely made a mistake in the two transactions Chin conducted for prescriptions for his mother- and father-in-law at CVS pharmacies. | Hazelwood Decl. Ex. 29 (Chin Dep.) at 104:5–13, 116:7–9, 117:12–21, 118:3–5, 120:7–19, 121:24–122:9, 124:19–23, 125:4–18, 145:1–146:13, 158:4–14, 162:21–164:2, 171:14–172:17, 173:17–22. |

| | | |
|---|---|---|
| | 42. Torpy and Paula Zorek disclaimed any knowledge of the intent behind each of the transactions about which they testified. | Hazelwood Decl. Ex. 23 (P. Zorek Dep.) at 195:17–196:20; Hazelwood Decl. Ex. 33 (Torpy Dep.) at 93:14–94:2, 100:13–101:15, 102:10–24, 106:21–107:14. |
| | 43. Chin admitted that he has no idea whether the individuals conducting a transaction involving use of a transfer coupon in connection with a prescription paid for by his mother-in-law's Medicare Part D plan realized that it was improper, much less that those individuals acted with knowledge that their conduct was unlawful. | Hazelwood Decl. Ex. 29 (Chin Dep.) at 110:2–6, 116:7–9, 117:12–21, 118:3–5, 120:7–19, 121:24–122:9, 124:19–23, 125:4–18, 158:4–14, 162:21–164:2, 171:14–172:17, 173:17–22. |
| | 44. Paula Zorek has no knowledge of even a single instance of an ineligible redemption, much less that such a transaction was ever done with the knowledge that it was unlawful. | Hazelwood Decl. Ex. 23 (P. Zorek Dep.) at 78:2–4, 83:21–84:1. |
| | 45. Joe Zorek has no knowledge of even a single instance of an ineligible redemption, much less that such a transaction was ever done with the knowledge that it was unlawful. | Hazelwood Decl. Ex. 30 (J. Zorek Dep.) at 36:13–17, 39:15–20, 42:5–9. |
| | 46. Paula Zorek suspected that the individuals who assisted her in April 2014 when she redeemed the transfer coupon in connection with the prescription for Joe Zorek did not know "that [the coupon] shouldn't have been honored." | Hazelwood Decl. Ex. 23 (P. Zorek Dep.) at 195:17–196:20. |

| | | |
|---|---|---|
| 47. | Justin Torpy could not recall a single specific instance when any improper transfer-coupon redemption occurred. | Hazelwood Decl. Ex. 33 (Torpy Dep.) 95:20–98:24, 109:14–110:1. |
| 48. | Torpy admitted that he had no basis to say that his Pharmacy Supervisor (or any other CVS employee) had ever instructed any other CVS retail pharmacy or either of the staff pharmacists who worked at Torpy's store to permit redemption of transfer coupons for government beneficiaries. | Hazelwood Decl. Ex. 33 (Torpy Dep.) at 145:2–146:19, 147:11–13. |
| 49. | Torpy and his colleagues were aware that CVS prohibited them from permitting government beneficiaries from redeeming transfer coupons, but he had no evidence that any CVS employee ever intended to violate the law; rather, he and his colleagues thought that the government beneficiary exclusion was a matter of "policy" or perhaps "contract." | Hazelwood Decl. Ex. 33 (Torpy Dep.) at 93:14–94:2, 100:13–101:15, 102:10–24, 106:21–107:14. |
| 50. | The vast majority of the claims challenged by Chin were submitted prior to March 23, 2010. | Hazelwood Decl. Ex. 36 (Albright Rep.) at 5. |
| 51. | CVS dispensed ▆▆▆▆▆▆ prescriptions for Medicare, Medicaid, and Tricare beneficiaries between 2008–April 30, 2014. | Dudley Decl. Ex. 18 (CVS-Chin_1181048). |

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5 | 52. The number of ineligible redemptions under Chin's own calculations represents just 0.1% of the hundreds of millions of prescriptions filled by CVS for government beneficiaries during the same time period. | Hazelwood Decl. Ex. 37 (Gaier Rep.) ¶¶ 30–32. |
| 6<br>7<br>8<br>9 | 53. Dr. Jeremy Albright agreed that the 1% level is a "small percentage." | Hazelwood Decl. Ex. 38 (Albright Dep.) at 268:23–269:4. |
| 10<br>11<br>12<br>13 | 54. Dr. Albright calculated the ratio of ineligible redemptions to total redemptions of transfer coupons at 9.82%. | Hazelwood Decl. Ex. 36 (Albright Rep.) at 8. |
| 14<br>15<br>16<br>17<br>18 | 55. Dr. Albright offers no opinion regarding the meaning of the ratio of ineligible redemptions to total redemptions of transfer coupons. | Hazelwood Decl. Ex. 38 (Albright Dep.) at 268:9–269:4, 269:21–272:1. |
| 19<br>20<br>21<br>22<br>23 | 56. Dr. Albright's calculation of the ratio of ineligible redemptions to total redemptions of transfer coupons was vastly inflated by calculation errors and legally erroneous assumptions that caused him to over-count the number of ineligible redemptions. | Hazelwood Decl. Ex. 37 (Gaier Rep.) ¶¶ 21–24, 29–30; Hazelwood Decl. Ex. 38 (Albright Dep.) at 153:7–154:14, 170:8–16, 171:3–12, 172:20–173:12, 175:8–15, 179:20–180:13, 186:25–187:5, 191:22–192:5; Hazelwood Decl. Ex. 36 (Albright Rep.) at 7–8, 14–16. |
| 24<br>25<br>26<br>27<br>28 | 57. Dr. Albright counted as "ineligible" a number of transactions in which coupons were redeemed by individuals using eligible insurance. | Hazelwood Decl. Ex. 37 (Gaier Rep.) ¶ 24; Hazelwood Decl. Ex. 38 (Albright Dep.) at 170:8–21, 172:20–173:12, 175:8–15. |

CVS PHARMACY, INC.'S RULE 56.1 STATEMENT OF UNCONTROVERTED FACTS

| | |
|---|---|
| 58. Dr. Albright counted duplicate transaction records as each representing a separate "ineligible" redemption. | Hazelwood Decl. Ex. 37 (Gaier Rep.) ¶¶ 21–23; Hazelwood Decl. Ex. 38 (Albright Dep.) at 153:7–154:14, 179:20–180:13, 186:25–187:5, 191:22–192:5. |
| 59. Dr. Albright double-counted a single redemption if it was associated with a prescription that was paid for by two government programs. | Hazelwood Decl. Ex. 37 (Gaier Rep.) ¶¶ 21–23; Hazelwood Decl. Ex. 38 (Albright Dep.) at 153:7–154:14, 179:20–180:13, 186:25–187:5, 191:22–192:5. |
| 60. Dr. Albright counted the redemption of coupons valued at exactly $10. | Hazelwood Decl. Ex. 37 (Gaier Rep.) ¶¶ 21–23; Hazelwood Decl. Ex. 38 (Albright Dep.) at 153:7–154:14. |
| 61. Because Chin's allegations extend only to gift cards valued in excess of $10, Dr. Albright intended to limit his opinion to situations where CVS distributed gift cards of over $10. | Hazelwood Decl. Ex. 38 (Albright Dep.) 151:18–152:19. |
| 62. Dr. Albright assumed that 100% of the transactions involving a transfer coupon issued by a CVS competitor involved coupons valued in excess of $10, even though there is no data regarding the value of such coupons. | Hazelwood Decl. Ex. 36 (Albright Rep.) at 8. |
| 63. Dr. Albright recognized that assuming that 100% of the transactions involving a transfer coupon issued by a CVS competitor involved coupons valued in excess of $10 was groundless, and he supplied separate calculations using an assumption that 80% of such coupons were valued in excess of $10. | Hazelwood Decl. Ex. 36 (Albright Rep.) at 7–8, 14–16. |

13
CVS PHARMACY, INC.'S RULE 56.1 STATEMENT OF UNCONTROVERTED FACTS

| | |
|---|---|
| 64. Considering the documents on which Dr. Albright relied, a reasonable assumption is that approximately 56% of the transactions involving a transfer coupon issued by a CVS competitor involved coupons valued in excess of $10. | Hazelwood Decl. Ex. 37 (Gaier Rep.) ¶ 29. |
| 65. Correcting for the issues identified above in Uncontroverted Facts Nos. 56–64, the percentage of all transfer-coupon redemptions by ineligible customers was 4.4%. | Hazelwood Decl. Ex. 36 (Albright Rep.) at 8; Hazelwood Decl. Ex. 37 (Gaier Rep.) ¶ 30. |
| 66. Chin has no evidence of any specific representation that CVS made that implicitly certified its compliance with the AKS. | |
| 67. Chin acknowledged during his deposition that CMS Form 855S is irrelevant to Medicare Part D claims. | Hazelwood Decl. Ex. 29 (Chin Dep.) at 243:25–245:5. |
| 68. There is no evidence of certifications submitted by CVS in connection with claims reimbursed by Medicaid or Tricare. | |
| 69. Beginning in March 2012, CVS's internal policies clarified that a government beneficiary who did not use her benefits could redeem a transfer coupon. | Dudley Decl. Ex. 19 (CVS-Chin_1063988); Dudley Decl. Ex. 20 (CVS-Chin_1063985); Dudley Decl. Ex. 17 (CVS-Chin_1063982). |

| # | Fact | Citation |
|---|------|----------|
| 70. | There is no evidence that eligibility for transfer coupons for government beneficiaries that did not use their benefits was ever advertised by CVS. | |
| 71. | There is no evidence that any coupon was ever redeemed by a government beneficiary who paid cash for his or her prescription. | Hazelwood Decl. Ex. 29 (Chin Dep.) at 191:24–192:4 (Chin is "not aware personally" of even a single instance of such a redemption); Hazelwood Decl. Ex. 38 (Albright Dep.) 330:5–331:6 (Dr. Albright has no information or opinion regarding such a redemption). |
| 72. | Chin testified that there is nothing wrong with an ineligible government beneficiary paying cash and redeeming a transfer coupon. | Hazelwood Decl. Ex. 29 (Chin Dep.) at 90:21–92:6. |
| 73. | There is no evidence of any prescription that was refilled by an ineligible government beneficiary who had previously redeemed a transfer coupon by paying for his or her prescription in cash. | |
| 74. | There is no evidence that CVS permitted the redemption of coupons by cash-paying customers with the intent of creating a quid pro quo for future business as compared to a hope or expectation that cash-paying beneficiaries who redeemed a coupon might return to CVS. | |
| 75. | Chin recognized that the redemption of a transfer coupon does not obligate a patient to continue filling his or her prescriptions at the same pharmacy. | Hazelwood Decl. Ex. 29 (Chin Dep.) at 93:2–6. |

15
CVS PHARMACY, INC.'S RULE 56.1 STATEMENT OF UNCONTROVERTED FACTS

| | |
|---|---|
| 76. Chin testified that he does not know whether any state informed the Court of a decision not to intervene in this case. | Hazelwood Decl. Ex. 29 (Chin Dep.) at 212:23–213:16 |

Dated:  January 14, 2019

                          Respectfully Submitted,

                          **SPERTUS, LANDES & UMHOFER, LLP**

By:   */s/ Matthew Donald Umhofer*
        Matthew Donald Umhofer

        WILLIAMS & CONNOLLY LLP
        Enu Mainigi*
        Holly Conley*
        Anne Rucker*
        Benjamin Hazelwood*
        James Kirkpatrick*
        *Admitted pro hac vice

        *Attorneys for Defendant CVS Pharmacy, Inc.*

CVS PHARMACY, INC.'S RULE 56.1 STATEMENT OF UNCONTROVERTED FACTS

# CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notifications of such filing to the following:

| | |
|---|---|
| David K. Barrett | david.barrett@usdoj.gov |
| Phillip E. Benson | philbenson@warrenbensonlaw.com |
| Patricia A. Stamler | pstamler@hertzschram.com |
| Wilmer J. Harris | wharris@sshhlaw.com |
| Michael D. Seplow | mseplow@sshhlaw.com |
| Aidan C. McGlaze | amcglaze@sshhlaw.com |
| Kristina Harootun | kharootun@sshhlaw.com |

By: */s/ Matthew Donald Umhofer*
Matthew Donald Umhofer
SPERTUS, LANDES & UMHOFER, LLP